UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICK TYREE, | ) |
|        Plaintiff, | ) |
| v. | ) No. 1:21-cv-02373-JRS-MG |
| FREUDENBERG-NOK, GP, | ) |
|        Defendant. | ) |

**Order on Motion for Summary Judgment**

**I.  Introduction**

This is an employment dispute.  Patrick Tyree worked for automotive parts manufacturer Freudenberg-NOK at its Shelbyville plant.  In March 2020 he was fired over the timing of his on-shift breaks.  Tyree, who has Type II diabetes, claims that it was medically necessary for him to take breaks when he did; he claims that Freudenberg failed reasonably to accommodate him and discriminated against him, both in violation of the Americans with Disabilities Act ("ADA").

Now before the Court is Freudenberg's Motion for Summary Judgment.  (ECF No. 27.)

**II.  Legal Standard**

The legal standard on summary judgment is well established:

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba* [*v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)] (quoting *Anderson v. Liberty*

*Lobby*, Inc., 477 U.S. 242, 248 [] (1986)). A theory "too divorced from the factual record" does not create a genuine issue of material fact. *Id.* at 721. "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020).

*Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021). The Court applies that standard here.

### III. Background

The basic facts are undisputed. ("Statement of Material Facts Not in Dispute," Def.'s Br. Supp. M. Sum. J. 5–28, ECF No. 28; "Statement of Material Facts in Dispute," Pl.'s Resp. 2–8, ECF No. 31.)[1]

Tyree started work at Fredudenberg's Shelbyville plant in 2013. Over the next seven years he held various positions on different shifts and production lines; Tyree held "third shift" (11:00 p.m.–7:00 a.m.) positions with flexible meal breaks beginning in 2017.

In January 2020, Tyree was working a third shift job on the "Prop Shaft" line, which had flexible meal breaks. Business on that line's product was slowing, and on January 6, 2020, Fredudenberg sought to transfer Tyree. It offered him a job on the "TPE" line that was third shift with flexible meal breaks, as Tyree preferred. Tyree turned down that job because it required two weeks' training on first shift. He refused

---

[1] The nonmovant is expected, in the "Material Facts in Dispute" section, to provide specific factual contentions that preclude summary judgment. S.D. Ind. Local Rule 56-1. Tyree has instead provided a narrative that agrees with Freudenberg's—as it happens, Tyree recorded each of his meetings with management during the relevant period. The issues, then, are not disputes of fact but rather disputes about the legal characterization of fact: whether Freudenberg's accommodations were "reasonable" and whether Tyree's firing was discriminatory.

to discuss his decision with management. On January 13, 2020, then, Freudenberg transferred Tyree to a third shift job on the "IDC" line. The IDC line, unlike the lines Tyree had previously worked on, ran continuously; all workers were required to take their meal break at the same time so that the line would have as little downtime as possible.

At his first week on the new job, Tyree refused to take his meal break at the 4:00–4:30 scheduled time. Instead he took his break at 6:30 (to run until the end of his shift at 7:00), thus idling the line for thirty minutes. Freudenberg estimates the half-hour downtime to cost $500–$1000 per day in lost revenue. Tyree's supervisor told him that he could not continue to break at 6:30. The problem escalated to management on Friday. The next Monday Tyree was again warned he could not break at 6:30; he did so anyway. On Tuesday he was called into a meeting with management, which he recorded. Tyree there asserted for the first time that his 6:30 meal break was not personal preference but medical necessity because of his diabetes.

Thus began a protracted and ultimately fruitless accommodation process. The plant manager at the January 21 meeting told Tyree he needed to provide a doctor's note outlining his medical needs. Tyree, after missing the Friday deadline given him, produced a note the next week that announced his need for short testing breaks every few hours; the note did not mention a need for a 6:30 meal break.

At a meeting on January 31, 2020, management asked Tyree whether he could take his meal at 7:00 instead of 6:30; Tyree said that change would require help from

3

his doctor; management asked Tyree to provide a timeline on which the change could be made.

Tyree produced another doctor's note that asserted that any changes to Tyree's 6:30 meal time would require "a period of weeks to months"; Freudenberg sought clarification from the doctor, but the doctor would not specify a timeline for making a 30-minute change to Tyree's schedule. On February 25, management again met with Tyree to discuss accommodations. Tyree was offered a job on second shift; he declined. Tyree was asked to provide a more definite timeline to change his meal schedule from 6:30 to 7:00. Tyree failed to do so.

On March 9, 2020, Freudenberg reiterated its accommodation offers—(1) a third shift, flexible-break TPE job that required two weeks' training on first shift, (2) a second shift job, or (3) a definite timeline for moving Tyree's meal from 6:30 to 7:00—all of which Tyree had declined. Freudenberg issued Tyree an ultimatum: commit to a definite timeline to effect the change from 6:30 to 7:00 meals, or be fired. Tyree refused to commit to a timeline and was fired.

## IV.   Discussion

Tyree has not filed a "Statement of Claims" as required by the case management plan. (Case Management Plan IV.B 5, ECF No. 16.) Nonetheless the parties seem to agree that Tyree's two claims are for failure to accommodate and for discrimination, both under the ADA.

A. Failure to Accommodate

To succeed on his failure to accommodate claim, Tyree must show, "(1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021) (citing *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). For Tyree to show he was not reasonably accommodated, he must "show that the accommodation [he] seeks is reasonable on its face." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013) (quoting *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002)).

Freudenberg disputes Tyree's ability to prove the third element. It argues it offered Tyree two reasonable accommodations: either "transfer [to] an available set up operator position on second shift" or for "Tyree to work with his [doctor] to begin to move his meal" from 6:30 to 7:00. (Def.'s Br. Supp. 22, ECF No. 28.) Tyree argues that neither of those accommodations sufficed.

"The ADA's definition of reasonable accommodation includes 'reassignment to a vacant position.'" *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (quoting 42 U.S.C. § 12111(9)(B)). And "the ADA does not obligate [the employer] to accommodate [the employee's] mere personal preferences, so long as its proposed option is reasonable." *Schneider v. Harmon Sols. Grp., LLC*, No. 21-2813, 2022 WL 2257022, at *2 (7th Cir. June 23, 2022), *reh'g denied*, No. 21-2813, 2022 WL 2977360 (7th Cir. July 27, 2022) (citing *Hoppe v. Lewis University*, 692 F.3d 833, 840 (7th Cir.

5

2012)). Thus Freudenberg's offer of a second shift job satisfies its reasonable accommodation obligations as a matter of law, unless Tyree can show that transfer to the second shift would not accommodate his disability. Tyree does not attempt such a showing. Instead he argues that "Freudenberg's designated evidence is devoid of any indication [he] turned down the second shift position only for personal reasons." (Pl.'s Resp. 11, ECF No. 31.) That argument fails. Tyree cannot "stave off summary judgment with speculation about what unproduced evidence might show," nor is "[m]erely finding an absence of evidence" sufficient for him to prevail. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 630 (7th Cir. 2020) (citing *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 985 (7th Cir. 2020) and quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 992 (9th Cir. 2007) (en banc)). Freudenberg is therefore entitled to summary judgment on the failure-to-accommodate claim.[2]

Even if Tyree could produce evidence showing he had medical reasons for declining Freudenberg's second shift accommodation, the other accommodation offered him was also reasonable. Tyree argues that "[i]t would have been a reasonable accommodation for Freudenberg to allow [him] to continue taking his meal breaks at 6:30 while he worked with his doctor to reasonably adjust his medication schedule so he could take them in the requested time range." (Pl.'s Resp. 10, ECF No. 31.) The Court, without so holding, is inclined to agree—and, contrary to Tyree's claim, (*id.*),

---

[2] Because the Court finds that Tyree was reasonably accommodated, Freudenberg cannot be liable for a breakdown, if any, in the interactive process. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) (citing *Sansone v. Brennan*, 917 F.3d 975, 980 (7th Cir. 2019)) ("[T]here is no independent cause of action for breakdown of the interactive process under the ADA.").

Freudenberg offered him exactly that accommodation. Freudenberg repeatedly offered to keep Tyree on while he worked with his doctor to change his meal schedule from 6:30 to 7:00. In fact it did keep him on for more than a month while accommodation negotiations were ongoing.[3] All Freudenberg required was Tyree's commitment to a definite timeline for effecting the change. That accommodation offer remained open even at the final meeting. Tyree, instead of meeting his employer halfway, dug in his heels and insisted that no one could know how long it would take for him to move his meal by half an hour. It is Tyree's intransigence, not Freudenberg's, at fault here. No reasonable juror could conclude otherwise.

    B. Discrimination

To prevail on his ADA discrimination claim, Tyree must show "(1) [he] is disabled; (2) [he] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) [he] suffered an adverse employment action; and (4) the adverse action was caused by [his] disability." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (citing *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020)). Here, only the fourth element is in dispute.

> Although there are many tests and rubrics for viewing discrimination claims, it is important to recall that, at the end of the day they are all merely convenient ways to organize our thoughts [on] the only question that matters: when looking at the evidence as a whole, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."

*Id.* (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

---

[3] During which time Tyree could have begun to move his meal—at a rate of one minute a day, the move would have been complete by the time Freudenberg issued its ultimatum.

7

Tyree argues that his firing was "caused by" his disability because he would not have needed accommodation had he not been disabled, and he was fired because of the breakdown of the accommodation process. (Pl.'s Resp. 14, ECF No. 31.) He also argues that Freudenberg's decision to transfer him to IDC, knowing all along that he needed 6:30 breaks, was a trap set to get him fired (and not, as the record evidence shows, part of Freudenberg's repeated attempts to keep him from being laid off in the face of changing business needs). (*Id.* at 14–15.) The theory is unsupported by any evidence in the record. The Court need not retread its accommodation analysis: Tyree could have kept his job had he transferred to a different shift or had he agreed to a reasonable timeline for moving his (allegedly medically necessary) meal time by half an hour. He insisted that either solution was impossible and so was fired. Anyone in his position would have been. No rational juror could conclude Freudenberg's discriminatory animus against diabetics underlay their decision.

## V. Conclusion

Freudenberg is entitled to summary judgment on Tyree's claims of ADA failure to accommodate and ADA discrimination. Those are, apparently, the only claims in this case.

Freudenberg's Motion for Summary Judgment, (ECF No. 27), is **granted,** and this case is closed. Final judgment shall enter separately.

**SO ORDERED.**

Date: 12/05/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record.